FILED
United States Court of Appeals
Tenth Circuit

April 1, 2015

Elisabeth A. Shumaker
Clerk of Court

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

LORETTA L. COOKSEY,

Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security
Administration,

Defendant - Appellee.

No. 14-6143
(D.C. No. 5:13-CV-00176-C)
(W.D. Okla.)

## ORDER AND JUDGMENT[*]

Before **BRISCOE**, Chief Judge, **LUCERO** and **MATHESON**, Circuit Judges.

Loretta L. Cooksey seeks reversal of the district court's judgment upholding

the decision of an administrative law judge (ALJ) to deny her application for social

security disability benefits. We have jurisdiction under 28 U.S.C. § 1291 and

42 U.S.C. § 405(g). We affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

Ms. Cooksey alleged her disability began on January 1, 2007. At her administrative hearing on August 17, 2011, Ms. Cooksey, represented by counsel, and a vocational expert (VE) testified. In his September 23, 2011 decision, the ALJ found Ms. Cooksey suffered from the severe impairments of degenerative disc disease and osteoarthritis. The ALJ also found these impairments did not meet or equal the listings for presumptive disability. The ALJ then concluded Ms. Cooksey could not perform her past work as a nurse's aide or laundry worker but she had the residual functional capacity (RFC) to perform a limited range of light work. The VE identified jobs a person with Ms. Cooksey's RFC could do that existed in significant numbers in the national economy. Consequently, the ALJ determined at step five of the controlling five-step sequential evaluation process, *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the five-step framework for determining disability), that Ms. Cooksey was not disabled under the Social Security Act. The Appeals Council denied review. Ms. Cooksey appealed to the district court, which affirmed the agency's denial of benefits.

## II. LEGAL STANDARDS

"We review the district court's decision de novo and independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal quotation marks omitted). We examine the record as a whole, but we do not reweigh the evidence. *Id.* We also do not "substitute our judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). In this context, "disability" requires both an "inability to engage in any substantial gainful activity" and a "physical or mental impairment, which provides reason for the inability." *Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (internal quotation marks omitted).

## III.  **DISCUSSION**

On appeal, Ms. Cooksey advances three challenges to the ALJ's finding that she is not disabled. First, she claims the ALJ did not properly evaluate and weigh the medical evidence. Second, she asserts error in the ALJ's determinations at steps two, three, four, and five. Finally, she contends the ALJ's credibility finding was flawed. We consider the first issue together with the remaining two because any alleged errors in evaluating the medical evidence must be tied to dispositive findings.

### A. *Alleged Errors at Steps 2, 3, 4, and 5*

**Step 2**

Ms. Cooksey asserts the ALJ erred in not finding at step two that she had a severe impairment caused by a closed head injury. This claim stems from Ms. Cooksey's attempt on March 22, 2009, to lift a barbeque grill, which fell and hit her on the head. She suffered a "tiny abrasion." Aplt. App. Vol. 2 at 215. She was

treated with an ice pack and sent home. She points to no medical evidence after March 22, 2009, to suggest she suffered from any further adverse effects from the accident. Moreover, any step-two error would be harmless because "the ALJ reached the proper conclusion that [Ms. Cooksey] could not be denied benefits conclusively at step two and proceeded to the next step." *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008).

**Step 3**

For her claimed step-three error, Ms. Cooksey argues the ALJ should have evaluated whether her diabetes met Listing 9.00 for endocrine disorders. *See* 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 9.00. "At step three, the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges as so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (internal quotation marks omitted). Listing 9.00 provides that the disabling effects of diabetes are evaluated by the effect of the condition on other body systems. *See* § 9.00(B)(5)(a)(i), (C). Nothing in the record suggests that Ms. Cooksey can satisfy the basic requirements of listing 9.00. Thus, the ALJ did not err in failing to consider the applicability of listing 9.00. *See Wall*, 561 F.3d at 1062 (noting record did not support applicability of a listing).

To the extent Ms. Cooksey claims her mental impairments met an unidentified listing, as discussed below in the step-four context, the psychological evidence was

inadequate to alert the ALJ to consider any mental listings. Consequently, Ms. Cooksey failed to meet "her step three burden to present evidence establishing her impairments meet or equal listed impairments," *Fischer-Ross*, 431 F.3d at 733.

**Step 4**

Ms. Cooksey next asserts step-four errors in the ALJ's RFC assessment that she could perform light work. RFC represents "the most [the claimant] can still do despite [her] limitations," 20 C.F.R. § 404.1545(a)(1), and must include "all of [the claimant's] medically determinable impairments," *id.* § 404.1545(a)(2). Ms. Cooksey asserts the RFC assessment was contrary to the medical evidence, the ALJ did not properly consider her pain, and the hypothetical questions posed to the VE did not include all of her impairments.

Ms. Cooksey argues that the RFC is flawed because the ALJ failed to properly weigh and evaluate the medical evidence. "It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions, including the opinions of state agency medical consultants." *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (citation and internal quotation marks omitted).

Ms. Cooksey alleges the ALJ failed to discuss the findings of Drs. Williams and Buffington concerning her physical limitations, which she contends preclude her from doing light work. The ALJ noted that Dr. Williams's examination revealed no sensory loss, and Dr. Buffington observed no neurologic deficit but found that

Ms. Cooksey had limited range of motion of the spine. The ALJ stated that neither physician placed any functional restrictions on Ms. Cooksey's activities that would preclude light work.

Although Ms. Cooksey argues on appeal that the findings of both Dr. Williams and Dr. Buffington indicate that she is not able to meet the sitting or standing/walking requirements for light work, she has merely recited those physicians' findings and provided her own lay conclusion that they preclude light work. Neither Dr. Williams nor Dr. Buffington opined on Ms. Cooksey's abilities to sit or stand/walk. But other physicians did: the ALJ gave great weight to the opinions of Drs. Mungul and Neely, both of whom stated that Ms. Cooksey could sit for about six hours in an eight-hour workday and stand/walk for about six hours in an eight-hour workday. The ALJ relied on those opinions because he found they were well-supported by medically acceptable clinical and laboratory techniques and were not inconsistent with the other evidence in the record. Moreover, Dr. Mungul relied on Dr. Williams's report, and Dr. Neely relied on Dr. Buffington's, to formulate their opinions that Ms. Cooksey could perform the sitting and standing/walking requirements for light work.

Accordingly, we conclude that the ALJ's RFC determination is supported by the requisite narrative statement, as well as substantial evidence. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (stating "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing

specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." (internal quotation marks omitted)).

Ms. Cooksey also objects to the ALJ's treatment of the scant evidence regarding her mental functioning. She relies on the March 2009 barbecue-grill injury and a statement by psychological evaluator Dr. Jeffries that Ms. Cooksey's "intellectual capabilities *may* have limited her ability [to complete the requested testing exercises]." Aplt. App. Vol. 2 at 230 (emphasis added). As discussed above, the barbecue-grill injury was a tiny abrasion, treated briefly with no further symptoms or treatment. Dr. Jeffries opined that Ms. Cooksey's "intellectual capacity *might* limit her in some occupational settings . . . [but] even with her limited capacity I think that she should be able to continue to perform occupationally if desired." *Id.* at 231 (emphasis added). This evidence simply does not indicate that Ms. Cooksey had a severe mental impairment, nor did she testify that she suffered from a mental impairment. Furthermore, this evidence was inadequate to trigger the ALJ's duty to develop the evidence. *See Wall*, 561 F.3d at 1063 (stating before ALJ must develop evidence claimant must show the issue is substantial and to present "evidence sufficient to suggest a reasonable possibility that a severe impairment exists").

Ms. Cooksey next claims that because the ALJ failed to include her pain, especially her pain from arthritis, in the hypothetical questions to the VE, the questions did not accurately reflect her limitations. But the ALJ found that Ms. Cooksey's complaints about the limiting effects of her pain were not entirely

credible, which we address below.  In formulating the hypothetical questions, the ALJ relied on the physical RFC assessment performed by Dr. Mungul, which in turn relied on Ms. Cooksey's pain complaints and Dr. Williams's diagnosis of osteoarthritis.  Consequently, the hypothetical questions presented to the VE were sufficient because they adequately reflected all of the limitations found to exist by the ALJ.  *See Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000).  Therefore, we find no error at step four.

**Step 5**

Ms. Cooksey also asserts error at step five, arguing that the ALJ stated that additional limitations impeded her RFC for light work but he did not identify any additional limitations.  Those limitations were included in a hypothetical question presented to the VE.  In addition to a physical RFC for light work, the ALJ added the following limitations:  a 49½-year-old person with an "eighth grade education, the ability to read, write, use numbers."  Aplt. App. vol. 2 at 47.  In response, the VE identified several jobs existing in the national economy Ms. Cooksey could perform.  This procedure was appropriate.  *See Krauser v. Astrue*, 638 F.3d 1324, 1333 (10th Cir. 2011) ("At step five . . . an ALJ may relate the claimant's impairments to a VE and then ask the VE whether, in his opinion, there are any jobs in the national economy that the claimant can perform.").

Ms. Cooksey also complains that the ALJ misapplied the Medical-Vocational Rules (the Grid) to find her not disabled.[1] As she correctly points out, the ALJ mischaracterized her as a "younger individual age 18-49," Aplt. App. vol. 2 at 19, when in fact she was 50, which is an individual "closely approaching advanced age," pursuant to the Grid, *see* 20 C.F.R. § 404.1563(d). This error was harmless because the Grid directs a finding of "not disabled" for a person with Ms. Cooksey's RFC, whether "closely approaching advanced age" or a "younger individual." *Compare* 20 C.F.R. Pt. 404, Subpt. P. App. 2 § 202.11 with *id.* § 202.18. Consequently, we can "confidently say that no reasonable factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

## B. *Credibility*

Finally, we turn to Ms. Cooksey's challenge to the ALJ's finding that her testimony was not fully credible. "[C]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks omitted). Those findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks omitted).

---

[1] Ms. Cooksey amended her onset date to August 15, 2009, because on that date she became 49.5 years old, "and the ALJ could consider her age to be 50 for purposes of evaluation under the grids." Aplt. Opening Br. at 29.

Ms. Cooksey relies on her hearing testimony in which she described her limited activities of daily living to demonstrate her inability to engage in substantial gainful activity. She testified that she cared for her four young grandchildren, prepared meals, washed dishes, and did laundry and housecleaning, but she required help from family members. In addition, she stated she had to sit down regularly and take daily naps.

The ALJ, however, observed that in an undated function report and a November 4, 2009 report, Ms. Cooksey described her activities of daily living to include child and pet care, washing, cooking, and housework, and stated she accomplished those responsibilities without help. The ALJ also mentioned Ms. Cooksey's attempt to lift the barbecue grill, indicating that she thought herself capable of lifting such a bulky, heavy object, contradicting her claim of total disability. An ALJ may factor into his credibility analysis a claimant's inconsistent "report[s of] what [she] was able and unable to do." *Lax v. Astrue*, 489 F.3d 1080, 1089 (10th Cir. 2007).

The ALJ also discounted Ms. Cooksey's credibility because, although she claimed to be totally disabled, there was no evidence that she sought medical treatment until three months after the date she was last insured. A claimant's failure to seek medical treatment is a proper factor in assessing the credibility of a claim of severe impairment. *See* SSR 96-7p, 1996 WL 374186, *7 (July 2, 1996); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (stating that when

evaluating credibility, the ALJ should consider, among other items, the claimant's regular contact with a physician and her willingness to try any prescribed treatment). The ALJ also noted that Ms. Cooksey stopped working, not due to a disability, but because she was laid off and did not have a car. Ms. Cooksey testified that she had reduced her work hours before she was laid off.

As part of her challenge to the ALJ's credibility finding, Ms. Cooksey argues that her testimony about her activities of daily living did not demonstrate they were equivalent to substantial gainful activity. But the ALJ did not fully credit her testimony, and she makes no argument that the evidence of her activities of daily living on which the ALJ did rely was inadequate.

In short, Ms. Cooksey seeks a reweighing of the evidence, which we cannot do. We conclude substantial evidence supported the ALJ's credibility determination.

## IV. **CONCLUSION**

The judgment of the district court is affirmed.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge

- 11 -