FILED
United States Court of Appeals
Tenth Circuit

September 5, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

LINDA L. HENDRON,

          Plaintiff-Appellee,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

          Defendant-Appellant.

No. 13-3243

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 6:12-CV-01205-SAC)**

_____

Submitted on the briefs:[*]

Barry R. Grissom, United States Attorney, Anne M. Zeigler, Special Assistant United States Attorney, Kansas City, Missouri, Kristi A. Schmidt, Chief Counsel, Region VII, Social Security Administration, Kansas City, Missouri, for Defendant-Appellant.

Kathleen E. Overton, Parmele Law Firm, Liberty, Missouri, for Plaintiff-Appellee.

_____

Before **HARTZ**, **TYMKOVICH**, **HOLMES**, Circuit Judges.

_____

[*]      After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**HOLMES**, Circuit Judge.

The Acting Commissioner of Social Security (Commissioner) appeals from a district court judgment reversing the Commissioner's denial of Social Security disability benefits to Linda L. Hendron and remanding to the agency for further proceedings. We have jurisdiction pursuant to 42 U.S.C. § 405(g). We reverse and remand to the district court, with directions to vacate its remand order and enter judgment in favor of the Commissioner.

## I. Background

This appeal relates to Ms. Hendron's third application for disability benefits. Her first application, filed in 1999, was denied on the merits. Her second application, filed in 2001, was denied on the basis of res judicata. She filed this latest application in June 2009, claiming a disability onset date of November 1, 1995. After the agency denied this claim, again on the basis of res judicata, Ms. Hendron requested a hearing before an administrative law judge (ALJ).

The ALJ held a hearing, at which Ms. Hendron testified. The ALJ also considered 19 medical exhibits that had not been submitted in support of Ms. Hendron's previous disability applications. Ms. Hendron asserted that she had the following limitations:

- Inability to drive due to the inability to put pressure on her right leg
- No control over bladder or bowels, which caused frequent accidents

- Was in constant sharp pain that was never less than a 5 to 6/10 even after being on pain medications
- Inability to roll over while in bed
- Inability to lift over 8 pounds
- Inability to walk for more than 10 feet before needing to sit down
- Inability to stand for more than 3 to 4 minutes before needing to sit down
- Inability to sit for more than 5 minutes before needing to get up
- Inability to get out of bed without narcotic pain relief

Admin. R. at 21.  The ALJ issued a written decision finding that Ms. Hendron was not disabled before the expiration of her insured status.

The ALJ initially determined that the date Ms. Hendron was last insured was December 31, 1995.  The ALJ therefore considered whether she was under a disability as defined in the Social Security Act during the two-month period between her alleged onset date, November 1, 1995, and December 31, 1995 (Relevant Time Period).  At steps one, two, and three of the sequential evaluation process, *see Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988), the ALJ found that during the Relevant Time Period Ms. Hendron had not engaged in substantial gainful activity; she had the severe impairment of status post lumbar surgeries; and she did not have an impairment or combination of impairments that met or medically equaled the Listings.

The ALJ then determined, based on the entire record, that through her date last insured Ms. Hendron had the residual functional capacity (RFC) "to perform the full range of sedentary work as defined in 20 CFR [§] 404.1567(a)."  Admin. R. at 20.  The ALJ further concluded that Ms. Hendron's "statements concerning the intensity,

persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.* at 21.

At step four, the ALJ determined that, through her date last insured, Ms. Hendron could not perform her past relevant work as a registered nurse, a job generally performed at the medium exertional level. Then, at step five, the ALJ found there were jobs that existed in significant numbers in the national economy through her date last insured that Ms. Hendron could have performed with her RFC. The ALJ concluded that a finding of "not disabled" was directed by the Medical-Vocational Guidelines. The Appeals Council denied review.

Ms. Hendron sought district court review of the Commissioner's decision. The district court reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). The court concluded that the ALJ failed to cite any evidence indicating that Ms. Hendron could perform the full range of sedentary work during the Relevant Time Period; failed to discuss the problems she had with her right foot at that time; and erred in relying on Ms. Hendron's sporadic activities after the Relevant Time Period that were insufficient to demonstrate that she could engage in substantial gainful activity. The district court further held that the ALJ had failed to develop a sufficient record on which to base a disability decision. The court suggested that, on remand, the Commissioner could re-contact Ms. Hendron's treating physician, request additional records, or call a medical expert to testify at a new hearing. The Commissioner filed a timely notice of appeal.

## II. Standard of Review

"We review de novo the district court's decision to reverse the [Commissioner], applying the same standards as those employed by the district court." *Nguyen v. Shalala*, 43 F.3d 1400, 1402 (10th Cir. 1994).

> We are limited to determining whether the ALJ's decision is substantially supported in the record. We have defined "substantial evidence" as more than a scintilla. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.
>
> In reviewing the record to make the substantial evidence determination, we may not reweigh the evidence nor substitute our judgment for the [Commissioner's]. . . . We note, however, that the failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis.

*Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994) (citations and internal quotation marks omitted).

## III. Discussion

The Commissioner contends that the ALJ reasonably evaluated Ms. Hendron's credibility and properly formulated her RFC, and that the ALJ's decision is supported by substantial evidence on the record as a whole. The Commissioner also maintains that remand for further development of the record is unnecessary and likely would be futile. Ms. Hendron counters that the ALJ did not support the RFC determination with a narrative statement explaining how the medical and non-medical evidence sustained a conclusion that she could perform a full range of sedentary work. She argues that, as a result, the ALJ's decision is not supported by substantial evidence.

Ms. Hendron also contends that the RFC is not in the proper form and that the district court did not err in remanding the case for further development of the record.

## A. ALJ's Narrative Statement and Substantial Evidence

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996). We agree with the Commissioner that the ALJ's RFC determination is supported by a proper narrative statement, as well as substantial evidence.

The ALJ thoroughly reviewed the medical evidence, which included records from before and after, but not during, the Relevant Time Period. The ALJ discussed Ms. Hendron's history of lower back pain, beginning with her work-related injury in August 1992, followed by her two back surgeries in May 1993 and April 1994. The ALJ specifically noted where the evidence was inconsistent with Ms. Hendron's claims of extreme limitations based on a lack of bladder and bowel control and lower back pain. The ALJ's analysis focused on a doctor visit on August 13, 1996, during which Ms. Hendron complained that she had been experiencing lower back pain for about a month, "precipitated by doing a fair amount of lifting." Admin. R. at 229. Importantly, she also told her doctor at that time that she had been "pain free" for nine months before her current problem. *Id.* As the ALJ noted, that nine-month

interval included the entirety of the Relevant Time Period beginning on November 1, 1995, and ending December 31, 1995.

The ALJ also described the claimant's own report of her abilities to sit, walk, and stand during an earlier doctor visit in November 1994, before she was "pain free" by her own account. She stated at that time that she could walk for half a mile twice daily for 45 to 60 minutes, stand for 30 to 45 minutes at a time, and sit for half an hour. *Id.* at 223. The ALJ stated, "One could assume that her abilities to perform these types of activities would have only improved during the time period that she was reportedly pain free." *Id.* at 22.

The ALJ additionally discussed the activities Ms. Hendron engaged in after the Relevant Time Period, including the fair amount of lifting as reported in August 1996; helping her husband do roofing work in April 2003 (during which she slipped off of a ladder and injured her lower back); caring for a large, male relative in April 2004 (during which she aggravated her lower back injury while trying to pull him out of bed); working on the family farm in May 2004 (during which she was kicked in the ribs by a horse); and playing with and lifting up her grandchildren in November 2004 (which aggravated her rib fractures). The ALJ stated, "While the claimant ultimately ended up either aggravating her lower back injury or suffering new injuries from these incidents, the fact that she was even attempting these types of activities indicates that the claimant's everyday limitations were not as severe as she alleged." *Id.* at 23.

Ms. Hendron criticizes the ALJ for not discussing her report during the August 1996 doctor visit that she "has always been left with numbness, tingling, and a dead sensation in the right foot and this is unchanged." *Id.* at 229. She points as well to her testimony that she was unable to drive during the Relevant Time Period because she could not put pressure on her right leg. She argues the ALJ was required to discuss this evidence under *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). In *Clifton*, we stated:

> The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.

*Id.* (citation omitted).

The record here reflects that the ALJ considered all of the evidence, and Ms. Hendron fails to demonstrate that the evidence regarding her foot problems was significantly probative. She does not explain how that evidence undercuts the ALJ's conclusion that she could do a full range of sedentary work. "The full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours during an 8-hour workday." SSR 96-9p, 1996 WL 374185, at *6 (S.S.A. July 2, 1996). As the ALJ noted, even when she was still experiencing pain in November 1994, Ms. Hendron reported that she could walk for 60 minutes twice a day and could stand for 30-45 minutes at a time. Admin R. at 223. Moreover, an ability to push with one's foot is not a requirement for sedentary work.

*See* SSR 96-9p, 1996 WL 374185, at *6 (stating that "[l]imitations or restrictions on the ability to push or pull will generally have little effect on the unskilled sedentary occupational base"); *see also* 20 C.F.R. § 404.1567(b) (providing that a job is in the "light work" category if "it involves sitting most of the time with some pushing and pulling of . . . leg controls").

Ms. Hendron also argues that the ALJ could not rely on her various reported activities because the record does not disclose the quality or quantity in which she engaged in them. She maintains that, because her activities were sporadic, any work she engaged in did not qualify as substantial gainful activity and could not show that she was able to do work at that level. But the ALJ noted Ms. Hendron's activities only in contrast to her claim of extreme limitations during the Relevant Time Period. Ms. Hendron's credibility was, appropriately, a considerable factor in the ALJ's RFC decision. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.").

We reject Ms. Hendron's assertion that the ALJ failed to explain sufficiently his RFC determination and support his decision with substantial evidence. Her contentions amount to an argument that this court should reweigh the evidence, which we cannot do. *See Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) ("We review only the *sufficiency* of the evidence, not its weight.").

## B.  Formulation of the RFC

The ALJ found that Ms. Hendron had the RFC to perform a *full range* of sedentary work as defined in 20 C.F.R. § 404.1567(a).  The Commissioner contends that the ALJ appropriately included all of her relevant functional limitations in this RFC.  Ms. Hendron does not contend, nor could she, that it is unclear whether the ALJ found her capable of performing *all* of the exertional demands of sedentary work.  Rather, she complains that the RFC is not in the proper form.  She maintains that the ALJ was required to separately discuss and make findings regarding her abilities to sit, stand, walk, lift, carry, push, or pull.

Social Security Ruling 96-8p provides that "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."  SSR 96-8p, 1996 WL 374184, at *3.  The Ruling states further that an ALJ's "[i]nitial failure to consider an individual's ability to perform the specific work-related functions *could* be critical to the outcome of a case."  *Id.* (emphasis added).  Therefore, the Ruling directs that "[a]t step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very heavy' work *because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it.*"  *Id.* (emphasis added).  But here the ALJ found that Ms. Hendron could not perform any of her past relevant work.

The Ruling says that a function-by-function analysis is also important at step 5, when the ALJ determines whether there is other work that the claimant could do by applying of the Medical-Vocational Guidelines. *See id.* The concern is that, without a function-by-function analysis, an ALJ "may . . . overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do." *Id.* at *4. Ms. Hendron asserts that, in assessing her RFC without an explicit function-by-function analysis, the ALJ overlooked her problems with sitting. We disagree.

Sedentary work involves mostly sitting, with occasional standing and walking, and the ability to lift up to ten pounds. 20 C.F.R. § 404.1567(a). Social Security Ruling 96-9p further clarifies that "[s]itting would generally total about 6 hours of an 8-hour workday." SSR 96-9p, 1996 WL 374185, at *3. Ms. Hendron points to evidence before her date last insured that she could sit for only one half hour at a time. The ALJ considered that evidence, but found that her ability to sit would not have been so restricted during the Relevant Time Period, when she was reportedly "pain free." Ms. Hendron also cites her report during her August 1996 doctor visit that prolonged sitting aggravated her lower back pain. But as the ALJ recognized, Ms. Hendron was seeking treatment at that time for lower back pain she had experienced for only one month, after being previously "pain free" for nine months, including during the Relevant Time Period.

Thus, the ALJ did not overlook Ms. Hendron's problems with sitting; he found that the evidence did not support any limitation on her ability to sit during the Relevant Time Period. In this case, the ALJ's failure to find explicitly that Ms. Hendron was capable of sitting for six hours during a regular eight-hour work day was not critical to the outcome of this case, and Ms. Hendron has not demonstrated error. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. . . . [W]e cannot insist on technical perfection.").

## C. Remand for Further Development of the Record

The Commissioner argues that a remand for further development of the record in this case is unnecessary and likely would be futile. We agree. The ALJ considered all of the newly submitted medical records in deciding Ms. Hendron's third disability application. The Relevant Time Period is now more than 18 years in the past, and recontacting Ms. Hendron's treating source would not further assist in evaluating her RFC at that time. Nor are her medical records so complex that the ALJ would benefit from the assistance of a medical expert. Finally, Ms. Hendron and her counsel are in the best position to have knowledge of any additional medical records that may be relevant to her disability claim. But with one exception, she does

- 12 -

not identify *any* medical records that have not been previously submitted. She points to a notation in a medical report from 2002 that references a doctor whose records are not included in the Administrative Record. *See* Admin. R. at 330. She does not explain why these records were not submitted with her 2009 disability application. More importantly, she does not indicate how these records are relevant to the ALJ's determination whether she was disabled during the Relevant Time Period.

## IV.  Conclusion

The judgment of the district court is reversed and this case is remanded to the district court, with directions to vacate its remand order and enter judgment in favor of the Commissioner.