**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 27, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ANTHONY J. MOTTAS,

     Petitioner,

v.

DEPARTMENT OF ARMY,

     Respondent.

No. 17-9504
(MSPB No. DE-1221-16-0415-W-1)
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HARTZ** and **O'BRIEN**, Circuit Judges.
_____

Anthony Mottas appeals the decision of the Merit Systems Protection Board (Board) denying his request for corrective action on his claim that he was subjected to personnel actions in retaliation for his whistleblowing communication. We have jurisdiction under 5 U.S.C. § 7703,[1] and we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Until late 2012, the United States Court of Appeals for the Federal Circuit had exclusive jurisdiction to review a final decision of the Board alleging a prohibited personnel practice described in 5 U.S.C. § 2302(b)(9), as alleged here. But for a five-year period beginning December 27, 2012, an appellant is authorized to

(continued)

# I. BACKGROUND

At the relevant times, Mr. Mottas was employed as a file clerk at the Department of the Army's Irwin Army Community Hospital (Agency). He also helped at the front desk. On February 23, 2016, Mr. Mottas submitted an action request form to the Inspector General expressing two concerns relating to his workplace: (1) for the preceding six years, he and other employees were not given required daily breaks despite his requests to his supervisors; and (2) he was assigned to do more work without receiving a job reclassification. This disclosure arguably implicated Cynthia Sallee, Mr. Mottas's direct supervisor, and Major Gordon Lyons, a member of Mr. Mottas's chain of command.

On April 1, 2016, Shellie Bolger, an Agency employee, sent an email to her supervisor, Barbara Garber, stating she had heard that Mr. Mottas was going to be assigned to work with her again after several months of working apart. Ms. Bolger reported that when she had worked with him in the past, he had read the medical files in the file room and questioned her regarding the various medical providers' actions. She indicated she did not agree with Mr. Mottas's practice of reading other people's medical files. Ms. Garber informed Major Lyons, who in turn informed Daniel Key, Compliance Specialist for the Health Insurance Portability and Accountability Act (HIPAA). Mr. Key then investigated whether Mr. Mottas had violated HIPAA.

---

seek judicial review in either the Federal Circuit or the appropriate regional circuit. 5 U.S.C. § 7703(b)(1)(B) (2012). Mr. Mottas has elected to appeal to this circuit.

On April 5, 2016, four days after the Bolger email, Ms. Sallee placed Mr. Mottas on paid administrative leave for April 5 and 6, 2016. From April 7 to June 2, 2016, he was detailed to work in the Outpatient Records Department. Following an investigation, on June 1, 2016, the Agency issued Mr. Mottas a notice of counseling for violating HIPAA by reading the medical files. He was informed that his detail to Outpatient Medical Records would end, and he would be detailed to work in the Department of Behavioral Health beginning on June 2, 2016. There, he would perform the duties of a file clerk, but would have no front-desk duties. He was further informed that on June 16, 2016, he would begin a rotation to the Department's various file rooms.

Mr. Mottas filed an Individual Right of Action with the Board alleging he was retaliated against for his Inspector General disclosure about daily breaks and job duties. Following a hearing, an administrative judge (AJ) determined that Mr. Mottas established a prima facie case of reprisal for making an Inspector General disclosure by establishing that his disclosure—the February 23, 2016 action request form—was protected under the Whistleblower Protection Enhancement Act and contributed to his job reassignments. In addition, the AJ ruled Mr. Mottas showed that the three challenged actions—placement on administrative leave, detail to Outpatient Records, and detail to rotate among the Department of Behavioral Health's file rooms—met the statutory definition of "personnel actions," *see* 5 U.S.C. § 2302(a)(2)(A)(iv) & (xii); 5 C.F.R. § 1209.4(a)(3) & (4) (defining "personnel action" to include "disciplinary or corrective action" and "[a] detail, transfer, or reassignment").

3

The AJ then held that the Agency established by clear and convincing evidence that it would have taken the same actions even absent Mr. Mottas's Inspector General disclosure. Therefore, the AJ denied Mr. Mottas's request for corrective action. Mr. Mottas did not petition for further agency review, so the AJ's decision became the Board's final decision. Mr. Mottas now appeals to this court.[2]

## II. LEGAL STANDARDS

The Whistleblower Protection Enhancement Act of 2012 prohibits a personnel action with respect to an employee because he "disclos[ed] information to the Inspector General of an agency." 5 U.S.C. § 2302(b)(9)(C). An employee may state a claim of reprisal for whistleblowing by first showing by a preponderance of the evidence that he or she made a protected disclosure under 5 U.S.C. § 2302(b)(9)(C), and that the disclosure "was a contributing factor in the personnel action which was taken . . . against such employee." 5 U.S.C. § 1221(e)(1); 5 C.F.R. § 1209.7(a). If the employee does so, however, the Board may not order corrective action if the agency "demonstrates by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure." 5 U.S.C. § 1221(e)(2); 5 C.F.R. § 1209.7(b). "Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations

---

[2] Mr. Mottas does not appeal the Board's rejection of his claim based on the Collective Bargaining Agreement, so that claim is waived. *See Kabba v. Mukasey*, 530 F.3d 1239, 1248 (10th Cir. 2008) (holding litigant waived issue on appeal by failing to present any argument challenging the decision under review).

4

sought to be established. It is a higher standard than preponderance of the evidence. . . ." 5 C.F.R. § 1209.4(e) (internal quotation marks omitted).

We will set aside the Board's decision if, among other grounds, it is "unsupported by substantial evidence," 5 U.S.C. § 7703(c). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wells v. Colvin*, 727 F.3d 1061, 1067 (10th Cir. 2013) (internal quotation marks omitted). We do not, however, substitute our judgment for that of the Board. *Williams v. Rice*, 983 F.2d 177, 180 (10th Cir. 1993).

## III. DISCUSSION

The parties do not dispute the Board's findings that Mr. Mottas made a protected disclosure, he was subjected to personnel actions after doing so, and the disclosure was a contributing factor in the personnel actions. It is also undisputed that Mr. Mottas's supervisor, Ms. Sallee, as well as his chain of command—Major Lyons, Colonel Timothy Bergeron, and Colonel Risa Ware—were aware of his Inspector General disclosure. It is further undisputed that the chain of command made the personnel decisions at issue with Ms. Sallee's input.

Mr. Mottas challenges the Board's determination that the Agency carried its burden of proving by clear and convincing evidence that it would have taken the same personnel actions even if Mr. Mottas had not made the Inspector General disclosure. We will follow the parties' lead and apply the factors used in *Carr v. Social Security Administration*, 185 F.3d 1318, 1324 (Fed. Cir. 1999), to evaluate Mr. Mottas's claims. Those factors are:

> [1] the strength of the agency's evidence in support of its personnel action; [2] the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and [3] any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.

*Id.*

## A. Placement on administrative leave and detail to Outpatient Records

The Board analyzed the first two challenged actions together given that both followed from the Bolger email. In assessing *Carr* factor one—the strength of the agency's evidence—the Board found that the Agency's evidence was "strong." Admin. R. at 521. The Board relied on the testimony of Ms. Bolger and Mr. Key that "nobody put them up to their actions," and "each of the individuals involved in [Mr. Mottas's] administrative leave, detail, and later rotation corroborated the same." *Id.* at 518. Moreover, the Board found that it was Mr. Key who decided to investigate Mr. Mottas and who determined that he had in fact violated HIPAA.

Mr. Mottas asserts that the Board ignored contrary evidence. He first contends the time lapse of over eight months between Ms. Bolger's observation of Mr. Mottas reading medical files and her email reporting his activity detracts from the strength of her allegations. But the Board did address this claim, noting that Ms. Bolger testified that she wrote the April 1, 2016 email when she learned that Mr. Mottas was again going to be assigned to the same file room where she worked. The Board found Ms. Bolger' testimony "extremely credible," *id.* at 518, a finding we do not reevaluate on appeal, *see Hambsch v. Dep't of Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986) (stating that credibility "determinations are virtually unreviewable").

6

To the extent Mr. Mottas relies on the Agency's HIPAA policy requiring complaints of HIPAA violations to be filed within 180 days of discovery, *see* Admin. R. at 95, the Board considered and rejected this argument. The Board observed that the policy refers only to a complaint, not an agency investigation, and the time limit applies to the date of discovery, not the date of the violation. *See id.*

Mr. Mottas next asserts that the Agency's evidence is weakened by the brief duration of his administrative leave and the evidence indicating that Mr. Key did not commence his investigation until a month later, on May 3, 2016. But the Board acknowledged the brief administrative leave. The Board credited Colonel Ware's testimony that the Agency wanted to keep Mr. Mottas useful during the investigation so it assigned him to Outpatient Records, which was in need of file clerks. On these limited facts, we cannot say that the timing significantly weakened the Agency's evidence.

Mr. Mottas further asserts that his own testimony that he was left alone in the record rooms diminished the strength of the Agency's evidence that he was detailed to Outpatient Records because his access to medical records needed to be limited. The Board acknowledged Mr. Mottas's testimony, as well as the testimony of Colonel Ware, which it characterized as "calm and forthright," *id.* at 523, that Outpatient Records provided supervision. The Board noted that even though Mr. Mottas had the opportunity to challenge Colonel Ware's statement about supervision, he did not do so. Mr. Mottas now argues that the Agency should have obtained the testimony of the file room supervisor, but he has cited no authority

7

requiring additional witnesses. He asks this court to reweigh the evidence, which we do not do. *See Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) (stating that when reviewing an agency's determination, this court does not reweigh the evidence).

Turning to *Carr* factor two—motive to retaliate on the part of the agency officials who were involved in the decision—the Board found only a "slight motive," Admin. R. at 519. Mr. Mottas contends Ms. Sallee and Major Lyons were motivated to retaliate against him because they were implicated in his Inspector General disclosure. The Board concluded that the Agency had "only the most generalized retaliatory motive . . . that can be presumed to exist for any official when a disclosure tends to reflect unfavorably upon his or her command." *Id.* Mr. Mottas has made no argument to challenge this reasonable conclusion.

We next consider *Carr* factor three—evidence that the agency took similar actions against employees who were not whistleblowers but who were otherwise similarly situated. Mr. Mottas pointed to two other employees who allegedly committed HIPAA violations. The first was a front desk clerk who handed a patient's confidential medical information to the patient's escort, rather than directly to the patient. At the time, this procedure was consistent with agency policy, although in violation of HIPAA rules. Consequently, the agency policy was changed. The Board found that even if the other employee had not made protected disclosures (and thus was not a whistleblower) and his or her line of supervision was related to Mr. Mottas's, the comparison was not relevant. The other employee committed only

8

one HIPAA violation and did not conceal it or deny doing do. In contrast, Mr. Mottas denied the allegation that he had looked through numerous confidential medical files. The Board found Mr. Mottas "gave the [A]gency far more reason for concern." *Id.* at 521.

In the second example, an undetermined number of folders were thrown in the trash, but no one was placed on administrative leave or detailed over the incident. The Board accepted Mr. Key's description of this incident as a "cut and dry violation," *id.*, and determined that the incident was dissimilar to Mr. Mottas's violation. The Board held that the other employee's single, apparently undisputed violation could not be compared to Mr. Mottas's repeated violations that he steadfastly denied he committed.

Mr. Mottas contends that the Board took too narrow a view of the requirement that employees be similarly situated. We disagree and conclude that substantial evidence supports the Board's treatment of the proposed comparators. We further conclude that substantial evidence supports the Board's resolution of Mr. Mottas's first two challenged actions.

## B. Rotation to other file rooms

The Board held that the Agency produced clear and convincing evidence that Mr. Mottas would have been detailed to rotate among the Department of Behavioral Health's file rooms even absent his Inspector General disclosure. Mr. Mottas complains that the work for this rotation did not include any front desk duties, thus demonstrating retaliation.

9

Applying the first *Carr* factor, the Board found strong reasons for the assignment: (1) Mr. Mottas told the Agency he wanted to remain a file clerk, and (2) the Agency needed a file clerk to perform the duties assigned to Mr. Mottas. Mr. Mottas alleges the Board disregarded evidence that detracted from its conclusion. On March 30, 2016, Mr. Mottas sent an email to Ms. Sallee indicating that he would continue to assist at the front desk, as he had in the past. *Id.* at 183. He also points to the Board's observation that Colonel Bergeron "testified that [Mr. Mottas] objected to being taken away from the opportunity to assist the front desk when he first learned of [Ms.] Sallee's new approach to his duties." *Id.* at 524.

Contrary to Mr. Mottas's claim, the Board considered this evidence, as well as evidence supporting the Agency's decision. Mr. Mottas's March 30 email also stated that he had decided to stay as a file clerk, to which Ms. Sallee agreed and told him that he would no longer work at the front desk. *Id.* at 182. The Board found that this action was "mainly consistent" with Mr. Mottas's "expressed preference to 'stay' as a file clerk." *Id.* at 524. The Board further noted that Mr. Mottas's offer to help at the front desk "was contrary to his previous complaints about performing [those duties,]" and "one of his key alleged disclosures was that he was performing such front desk duties outside of his position description, i.e., that he *should not* have been performing such desk duties." *Id.* The Board also relied on the Agency's evidence that additional file clerks were needed. Again, Mr. Mottas asks this court to reweigh the evidence, which we do not do. *See Hendron*, 767 F.3d at 956.

10

For *Carr* factor two, Mr. Mottas again asserts that because his Inspector General disclosure arguably implicated Major Lyons and Ms. Sallee, they had a strong motive to retaliate against him. But again, he has provided no additional evidence or reasoning to support this argument. Substantial evidence supports the Board's determination that the Agency had only a slight motive to retaliate by assigning him to rotate among the file rooms.

Finally, the Board found that *Carr* factor three was "neutral" because neither party proffered any similarly situated employees. Admin. R. at 525. Mr. Mottas contends that the Agency's failure to produce evidence of similarly situated employees cuts in his favor. He argues that "'the absence of any evidence concerning *Carr* factor three may well cause the agency to fail to prove its case overall.'" Aplt. Br. at 26 (quoting *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1374 (Fed. Cir. 2012)). But *Whitmore* does not hold that a lack of evidence concerning *Carr* factor three weighs against the agency. On the contrary, *Whitmore* states that "*Carr* does not impose an affirmative burden on the agency to produce evidence with respect to each and every one of the three *Carr* factors," and "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis." *Whitmore*, 680 F.3d at 1374. Therefore, the Board did not err in finding this factor was neutral. The Board's decision regarding Mr. Mottas's rotation to the Department of Behavioral Health's file rooms is supported by substantial evidence.

## IV. CONCLUSION

In sum, substantial evidence supports the Board's determination that the Agency established by clear and convincing evidence that it would have taken the same personnel actions in the absence of Mr. Mottas's Inspector General disclosure. Accordingly, the Board's decision is affirmed.

Entered for the Court

Timothy M. Tymkovich
Chief Judge

12