FILED
United States Court of Appeals
Tenth Circuit

January 8, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MELISSA OLSON,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 20-5034
(D.C. No. 4:18-CV-00665-FHM)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **HOLMES**, and **EID**, Circuit Judges.
_____

Melissa Olson appeals from the district court's judgment upholding the

Commissioner's denial of her applications for a period of disability and disability

insurance benefits and Supplemental Security Income. Exercising jurisdiction under

28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

**I**

Alleging an onset date of August 1, 2015, when she was 43 years old, Olson applied for benefits based on fibromyalgia and other impairments. Applying the five-step evaluation process, see Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009), the administrative law judge (ALJ) determined at step one that Olson had not engaged in substantial gainful activity since her onset date. At step two, she found that Olson's fibromyalgia and morbid obesity were severe impairments, but that her depression and left-knee degenerative changes were non-severe. At step three, the ALJ concluded that none of Olson's severe impairments met or medically equaled a listed impairment. Then, at step four, she assessed Olson with the residual functional capacity (RFC) to perform sedentary work:

> She is able to lift, carry, push or pull up to five pounds frequently and 10 pounds occasionally; able to sit for up to six hours in an eight-hour workday; able to stand and/or walk up to two hours in an eight-hour workday; able to occasionally climb ramps or stairs, stoop or crouch; and should never climb ladders, ropes or scaffolds, kneel or crawl.

She further determined that Olson was not able to perform her past relevant work. Moving on to step five, the ALJ concluded, based upon the testimony of a vocational expert (VE), that Olson was able to perform other jobs available in significant numbers in the national economy. Accordingly, the ALJ held that Olson was not disabled and denied her applications for benefits. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. The district court affirmed.

2

## II

In a Social Security benefits case, "we independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence." <u>Wall</u>, 561 F.3d at 1052 (quotation omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019) (alterations adopted and quotation omitted). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id.</u> (quotation omitted). Substantial-evidence review does not allow us to "reweigh the evidence or retry the case." <u>Wall</u>, 561 F.3d at 1052 (quotation omitted).

## A

Olson argues that the ALJ did not properly consider the opinion of her treating medical source, Dorothy Mayes, ARNP-CNP. In June 2015, Mayes completed a handicap-placard application for Olson, marking the option that the applicant "[i]s severely limited in . . . her ability to walk due to an neurological, or orthopedic condition." And in May 2017, Mayes opined that in an eight-hour workday, Olson could sit for two to three hours and stand or walk for less than two hours. She further opined that Olson's obesity exacerbated her physical condition and that she needed to rest frequently because of pain and fatigue. The VE testified that a person

3

experiencing the limitations that Mayes assessed on sitting, standing, and walking could not perform any jobs available in the national economy.

Noting that Mayes was a treating source, but not an acceptable medical source,[1] the ALJ gave her opinion little weight because the limitations she assessed were not supported by the medical evidence. The ALJ also noted that the 2017 opinion Mayes submitted was incomplete: "It does not address the claimant's ability to lift or carry and does not include other functional limitation[s] that are relevant to disability determination."

Even though Mayes was not an acceptable medical source, the ALJ was required to consider her opinions using the same factors applicable to acceptable medical sources. See 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1). The ALJ's primary reason for discounting Mayes' opinions was that they were not supported by the medical evidence. This is a legitimate reason to discount a medical opinion. See id. §§ 404.1527(c)(3), 416.927(c)(3). The question, therefore, is whether substantial evidence supports this asserted reason.

On the same date Mayes filled out the June 2015 placard application opining that Olson's ability to walk was "severely limited," her examination indicated that Olson's gait was "normal, both sides, full weight bearing, no assistive device." Mayes further "[e]ncourage[d] exercise," although she recognized that back and knee

---

[1] Olson applied for benefits before March 27, 2017, the effective date of regulations expanding the definition of "acceptable medical source" to include advanced nurse practitioners. See 82 Fed. Reg. 5844, 5844-46 (Jan. 18, 2017).

4

pain would cause "some difficulty." A month later, Mayes' examination notes again reported that Olson's gait was "normal, both sides, full weight bearing, no assistive device." These relatively normal examination findings constitute substantial evidence to support the ALJ's decision to discount Mayes' June 2015 placard application opinion as unsupported by the medical evidence.

As reason for her May 2017 assessed limitations on sitting, standing, and walking, Mayes identified Olson's antalgic gait, her "[d]ifficulty getting out of seated position," and the fibromyalgia tender points assessed upon examination. The examination notes from January to April 2017 do document an antalgic gait, difficulty in changing positions, and tender points. But Mayes did not explain how these results related to her assessed limitations, and neither the proffered reasons nor the examination notes appear to support these assessments. Two agency physicians who reviewed the medical records determined that Olson could perform the full range of light work,[2] which includes jobs that "require[] a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls," 20 C.F.R. §§ 404.1567(b), 416.967(b). To the extent that Olson argues the ALJ should have discussed the medical evidence in more depth, such an argument would not furnish us with a basis for reversal. "Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct

---

[2] The ALJ gave the agency reviewers' opinions little weight because she assessed Olson with an RFC for sedentary work rather than light work. This tailoring of the RFC to a more restrictive level, however, worked to Olson's benefit.

5

legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012). "In conducting our review, we should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection." Id.

Olson further complains that the ALJ did not discuss Mayes' opinions that obesity exacerbated her other physical conditions and that she had difficulty rising from a seated position. The decision indicates, however, that the ALJ considered the opinions, and any failure to discuss them in detail does not rise to the level of reversible error. "In the case of a nonacceptable medical source . . . the ALJ's decision is sufficient if it permits us to follow the adjudicator's reasoning." Id. at 1164 (quotation omitted).

**B**

Olson also argues that the ALJ did not properly consider Olson's own statements about her impairments. Olson testified that her fibromyalgia tired her and that she suffered from pain in her knees, hips, shoulders, wrists, and ankles. She stated that she could not do work, such as household chores, for more than ten minutes, and then she had to lie down for approximately thirty minutes before she could do anything else. Of her waking time, she estimated that she spent approximately nine hours, or 85 to 90 percent, lying down. She further estimated that she could sit for approximately thirty minutes and stand or walk for fifteen minutes before needing to lie down. By the time of her hearing, she used a cane to

6

help her stand from a seated position and to help her walk. She was able to do some cooking and household chores, and she went to the grocery store with her mother. She had been working part-time as a waitress in a small café, but her hours had been reduced until she was working only two or three hours a day, and only one or two days a week.

The ALJ found that Olson's testimony about the extent of her pain was "not entirely consistent with the medical evidence and other evidence in the record." At a later point in her decision, the ALJ further explained that Olson had alleged her pain was 10 out of 10 at examinations before her alleged onset date, but the examination findings "were not consistent with such a severe pain level." Moreover, "prior to [Ms. Olson's 2014] consultative examination, she admitted that she did not take her pain medication and if she had, she would have been in a lot less pain." The ALJ also noted that although Olson "indicated that she could barely do anything and lied down about 85 to 90 percent of the day[, she] appeared to be able to perform simple household chores, could drive, and continued to work part-time until recently."

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Newbold v. Colvin, 718 F.3d 1257, 1267 (10th Cir. 2013) (quotation omitted).[3] "[S]o long as the

---

[3] The Commissioner no longer uses the term "credibility" in evaluating a claimant's statements. See Social Security Ruling (SSR) 16-3P, 2016 WL 1119029, at *1

ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, he need not make a formalistic factor-by-factor recitation of the evidence. Again, common sense, not technical perfection, is our guide." Keyes-Zachary, 695 F.3d at 1167 (citation and quotation omitted).

Olson complains that the ALJ did not consider the observations of Deborah Holmes, Ph.D., regarding Olson's pain; did not link her conclusions to any evidence generated after the alleged onset date; did not discuss how obesity contributed to Olson's pain; and did not discuss the limited nature of her part-time work and her employer's opinion that she was not performing well. She also asserts that the ALJ selectively took parts of her testimony about how long she would lie down every day and posits that her allegations of pain and her daily activities are not inconsistent. But none of these arguments establish that the ALJ's evaluation resulted in reversible error.

Several of Olson's "contentions amount to an argument that this court should reweigh the evidence, which we cannot do." Hendron v. Colvin, 767 F.3d 951, 956 (10th Cir. 2014). That Holmes observed Olson to be in pain, for example, does not necessarily establish that her pain was disabling. The ALJ's failure to discuss in detail other evidence, such as the effects of her obesity and her employer's evaluation of her work, also goes to the weight of the evidence.

---

(Mar. 16, 2016). The analysis, however, remains substantially the same. Compare SSR 16-3p, 2016 WL 1119029, with SSR 96-7p, 1996 WL 374186 (July 2, 1996).

Olson objects that the ALJ relied on her reports of pain in 2014 and 2015, before her alleged onset date. But her own statements and evaluations of her pain are relevant to evaluating her testimony at the hearing. Olson's admission that she failed to take her pain medications before her 2014 consultative examination and that she would suffer less pain had she taken them coupled with her 2015 estimates of extreme pain notwithstanding relatively normal examination results constitute substantial evidence supporting the ALJ's evaluation of her testimony.

## III

The district court's judgment is affirmed.

Entered for the Court

Carlos F. Lucero
Circuit Judge