**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 24, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JAMES FLOYD FANNIN, JR.,

Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

Defendant - Appellee.

No. 20-7027
(D.C. No. 6:18-CV-00337-KEW)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BRISCOE**, and **CARSON**, Circuit Judges.
_____

James Floyd Fannin, Jr., appeals from an order of the district court affirming

the Social Security Commissioner's denial of his application for supplemental

security income and disability insurance benefits under the Social Security Act.

Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

**BACKGROUND**

Fannin is 45 years old. He has a high school education and past work experience as a press operator, thermal machine operator, delivery driver, truck driver, surface cleaner, and correctional officer. He alleged he became unable to work beginning November 25, 2010, due to depression, anxiety, and diabetes. In February 2016 Fannin filed for disability and disability insurance under Title II and for supplemental social security income under Title XVI of the Social Security Act. *See* 42 U.S.C. § 401–34 (Title II); 42 U.S.C. § 1381–85 (Title XVI).[1] The state agency denied his claim initially and on reconsideration, so Fannin appeared before an administrative law judge ("ALJ") who conducted a hearing in May 2017.

In her written decision, the ALJ followed the five-step sequential evaluation process the Social Security Administration uses to review disability claims.[2] She

---

[1] This appeal stems from Fannin's third application for disability benefits under the Social Security Act. He previously applied, unsuccessfully, in December 2010 and May 2012.

[2] We have described the five-step process as follows:

> Social Security Regulations mandate that the ALJ who determines a claim for benefits under the Social Security Act follow a five-step evaluation: (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work. If at any point in the process the [Commissioner] finds that a person is disabled or not

2

considered medical records from, inter alia, state agency psychologist Dr. Matthew Turner, Ph.D., who reviewed Fannin's medical records related to treatment for his mental health and completed a Mental Health Residual Functional Capacity Assessment ("MRFCA").

In section I of the MRFCA, Dr. Turner opined Fannin showed "moderate[]"[3] limitations in "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Aplt. App. vol. 2 at 143. Dr. Turner wrote "see below" in the space requesting a narrative explanation of those limitations. *Id.* In section III, Dr. Turner's narrative explanation stated Fannin "retain[ed] the ability to understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions [and] respond appropriately to changes in routine work setting." *Id.*

At the hearing, the ALJ mirrored the language from Dr. Turner's report in the hypothetical she posed to a vocational expert:

---

disabled, the review ends.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citation, footnote, and internal quotation marks omitted).

[3] The agency defines a "[m]oderate" limitation in mental functioning in a work setting as one in which the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.F.2.c.

[A] younger individual with the work background and education as indicated, who . . . hypothetically, has no exertional limitations, and is able to understand, remember, and carry out detailed, but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, frequently interact with co-workers, supervisors, and the public, and respond to changes in routine work settings. Would this individual be able to do any of this person's past work?

*Id.* at 81–82. The vocational expert responded such an individual would be able to perform Fannin's past work as a delivery driver, truck driver, and surface cleaner. She further opined such an individual could work as a laundry worker, hand packager, or stocker.

Based in part on the opinions of Dr. Turner and the vocational expert, at step four the ALJ found Fannin "is capable of performing past relevant work as a delivery driver, truck driver, and surface cleaner." *Id.* at 175. She also found, at step five, "[i]n the alternative, considering [Fannin's] age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that [Fannin] also can perform," including laundry worker, hand packager, and stocker. *Id.* at 175–76. The ALJ therefore concluded Fannin had not been under a disability, as defined under Title II or XVI of the Social Security Act. After exhausting his administrative remedies, Fannin filed a civil action seeking review under 42 U.S.C. §§ 405(g) and 1383(c)(3). The district court affirmed the ALJ's decision, and Fannin appeals.

4

## DISCUSSION

We review the district court's decision de novo, applying the same standards as the district court. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). We therefore review the decision of the ALJ to determine whether substantial evidence supports her factual findings and whether she applied the correct legal standards. *See id.* "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is "more than a scintilla." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "We do not reweigh the evidence or retry the case, but we meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal quotation marks omitted).

Fannin challenges the ALJ's decision in two respects. First, he contends the hypothetical the ALJ propounded to the vocational expert did not adequately account for the notations Dr. Turner made in section I of the MRFCA, resulting in improper findings at steps four and five of the sequential evaluation. Second, he argues the ALJ did not sufficiently consider or adequately explain the weight she gave to Dr. Turner's opinion. We reject each contention.

### 1.     *Appropriateness of hypothetical propounded to vocational expert*

Fannin argues the ALJ erred in propounding a hypothetical to the vocational expert that encapsulated Dr. Turner's conclusions in section III of the MRFCA but not his remarks in section I. But the Social Security Administration's Program

5

Operations Manual System (POMS) characterizes section I as "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation [that] does not constitute the RFC assessment." SSA POMS DI24510.060 (bolding omitted). Challenges to whether an ALJ assessment of residual functional capacity incorporate limitations in section I ask "the wrong question. . . . We compare the administrative law judge's findings to [Dr. Turner's] opinion on residual functional capacity, not [his] notations of moderate limitations." *Smith v. Colvin*, 821 F.3d 1264, 1269 n.2 (10th Cir. 2016).

Dr. Turner included a narrative explanation in section III for his findings of a moderate limitation in section I by concluding Fannin "retain[ed] the ability to understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions [and] respond appropriately to changes in routine work setting." Aplt. App. vol. 2 at 143. This conclusion is consistent with his section I remarks that Fannin exhibited "moderate"—that is, "fair," *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.F.2.c— "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," Aplt. App. vol. 2 at 143, so the ALJ did not err in conveying Dr. Turner's Section III conclusion to the vocational expert.

Even if it were possible to view Dr. Turner's opinion or the ALJ's findings derived from it with more skepticism, to do so would require us to reweigh the

evidence, which exceeds the scope of substantial-evidence review. *See Glass*, 43 F.3d at 1395. We therefore reject Fannin's first challenge to the ALJ's decision.

2. *Consideration of medical source opinions*

Fannin also argues the ALJ did not provide adequate justification for giving Dr. Turner's opinion partial weight. The ALJ concluded Dr. Turner's opinion "was persuasive at the time it was issued. However, evidence presented at the hearing level, including mental health treatment notes . . . and [Fannin's] testimony, supports additional social limitations." Aplt. App. vol. 2 at 174. Fannin contends the ALJ "failed to explain exactly what it was in the newly admitted evidence of record and in Claimant's testimony that required elimination of the moderate limitations [described in section I of the MRFCA]," Aplt. Opening Br. at 31, but in doing so he misreads the ALJ's decision.

The ALJ did not eliminate the moderate limitations Dr. Turner noted in section I of the MRFCA; she accounted for them by relying on Dr. Turner's narrative explanation for those limitations in section III. But while Dr. Turner opined Fannin had "[n]o" social interaction limitations, Aplt. App. vol. 2 at 143, the ALJ concluded Fannin could only "frequently" interact with coworkers, *id.* at 171. Substantial evidence supports this more restrictive RFC assessment, which favored Fannin.

Relatedly, Fannin asserts the ALJ failed to adequately explain the reasons for the weight she gave to Dr. Turner's opinion because she did not discuss the factors in

20 C.F.R. § 404.1527 or § 416.927.[4] But the ALJ need not "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). The ALJ discussed factor 2, "the nature and extent of the treatment relationship," by recognizing Dr. Turner was a "non-examining" source, Aplt. App. vol. 2 at 173; factors 3 and 4, "the degree to which the physician's opinion is supported by relevant evidence," and "consistency between the opinion and the record as a whole," by finding Dr. Turner's opinion was persuasive when rendered but superseded in part by subsequent record evidence, *id.* at 174; and factor 5, "whether or not the physician is a specialist in the area upon which an opinion is rendered," by noting Dr. Turner was a psychologist, *id.* at 173. The ALJ decision was therefore "sufficiently specific to make clear to any subsequent reviewers the weight [she] gave to the . . . opinion and the reasons for that weight." *Oldham*, 509 F.3d at 1258 (internal quotation marks omitted).

---

[4] Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Goatcher v. U.S. Dep't of Health & Hum. Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).

**CONCLUSION**

We affirm the judgment of the district court.

Entered for the Court


Joel M. Carson III
Circuit Judge