**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 15, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

ANGLIA LURRELLA JAMES,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 23-8023
(D.C. No. 2:22-CV-00077-NDF)
(D. Wyo.)

_____

### ORDER AND JUDGMENT*
_____

Before **TYMKOVICH**, **PHILLIPS**, and **ROSSMAN**, Circuit Judges.
_____

Anglia Lurrella James appeals the district court's order affirming the

Commissioner's decision to deny her application for social security disability

benefits.  Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g),

we affirm.

---

\* After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## PROCEDURAL BACKGROUND

James alleged a disability onset date of August 9, 2014, due to issues with her shoulders.  Her applications were denied initially and on reconsideration.  Following a hearing, the administrative law judge (ALJ) found that James was not disabled from the onset date through December 31, 2019—the last day insured—because she could perform a range of light work with postural, manipulative, and environmental limitations.  In making this finding, the ALJ acknowledged James' testimony that due to medication side effects she was unable to complete tasks and spent much of the day lying down; however, he found her testimony was not supported by the record and therefore, he did not include these alleged limitations in his determination of her residual functional capacity (RFC).[1]  Specifically, he found that although her "medically determinable impairments could reasonably be expected to cause the alleged symptoms, . . . [her] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  Aplt. App. at 27.

After the Appeals Council denied review, James timely filed a complaint in the district court, raising a single claim of error:  Whether the ALJ's finding that James "was not 'disabled' . . . [was] supported by substantial evidence where [the ALJ] did not recognize that the 'heavy medications' prescribed by the claimant's physicians

---

[1] A claimant's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1545(a)(1).

for pain caused her to be sedated, drowsy, subject to dizziness and unable to work for up to two hours a day excluding work breaks and lunch." *Id*. at 59 (internal quotation marks omitted). The court affirmed the Commissioner's denial of benefits.

On appeal, James raises the same argument of error that she made in district court—the ALJ failed to include the alleged side effects of pain medications in determining James' RFC.

## STANDARD OF REVIEW

We review the district court's decision de novo, applying the same standards it applied. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). We thus review the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *See id*. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). This "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019).

In conducting our review, we may neither reweigh the evidence nor substitute our judgment for the Commissioner's. *See Hendron*, 767 F.3d at 954. Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the Commissioner's] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

**THE EVIDENCE**

In 2014, James injured her left shoulder in a work-related incident. An MRI showed degenerative changes and damage to a tendon. After conservative treatments failed, she underwent surgery in 2015. During her recovery, James used various narcotic medications to manage her pain with only minor side effects. And despite using narcotic pain medications, she remained alert and oriented. Several months after the surgery, her surgeon stated that James was at maximum medical improvement and could return to work without restrictions. Not long thereafter, she was examined by a different physician who agreed that James should be released to work with no restrictions; however, she did not return to work.

Instead, throughout the remainder of 2015 and 2016, James sought treatment with multiple providers, including two orthopedic specialists. She intermittently used narcotic pain medications, with limited reports of nausea or other side effects. During this time, various physicians continued to advise James to go back to work at some level. For example, one doctor advised that James could perform light to medium work provided she did not use her arm repetitively and another reported that she could return to light duty work with no lifting over twenty pounds.

In 2017, James began pain management services with a physician assistant (PA). She told him that she had not been on pain medications for approximately two years but mentioned that Norco and Percocet had been effective in the past to treat her pain. Over the next few months, the PA prescribed several different opioids. On the handful of occasions when James mentioned issues with sedation or nausea, the

PA changed her medication.  More often, however, James denied any medication side effects.  Ultimately, the PA settled on Percocet as the most effective pain reliever.  The PA consistently observed that James was alert and oriented during her office visits and displayed no mental abnormalities.

Throughout 2018, James was seen by the PA and remained on Percocet for pain control.  And although she reported variations in the level of pain, she described the pain as stable in character and distribution and admitted that medication helped her symptoms.  She continued to deny medication side effects and did not mention ongoing issues with nausea or sedation.

After seeking an opinion from a different surgeon, James underwent a second shoulder surgery in late 2018.  James remained on Percocet following the surgery.  On a few occasions during her follow-up visits, she mentioned stomach issues; however, she mostly denied any other side effects.  She was described as alert and oriented during her office visits with no mental deficiencies noted.

In mid-2018 and mid-2019, James was evaluated by a psychologist in relation to her pain-management treatment.  In both reports, James was described as alert, oriented, and articulate, and did not exhibit any mental status deficits such as lessened awareness or disorganized thinking.  On December 31, 2019—her date last insured—James was still on Percocet with no specific complaints of side effects.

In early 2020, James was placed at maximum medical improvement, although the surgeon stated that she could not perform a labor-intensive job and most likely

could not lift more than ten to fifteen pounds.  Shortly thereafter, James filed for disability benefits.

As part of her claim, in April 2020 James completed a report in which she described her activities of daily living.  She admitted that she was able to prepare simple meals, clean, drive, go out alone, shop, handle her finances, and watch her nine-year-old grandson and help him with homework.  Although James discussed her ongoing physical limitations such as difficulties reaching and lifting heavy items, she stated that she was able to pay attention for a long time, follow written and spoken instructions very well, and able to finish what she starts.  A few months later, a state agency medical consultant reviewed James' records and assessed that she had abilities consistent with a reduced range of light work.[2]

In the first quarter of 2021, James was referred by vocational rehabilitation for a psychological evaluation to assess her level of functioning.  She reported ongoing shoulder pain and taking Oxycodone daily.  While James mentioned difficulties with falling and staying asleep, she denied taking naps during the day and the examiner noted that she did not appear tired or lethargic.  The examiner suggested that James' relatively low scores on formal intelligence testing were possibly due to side effects of the Oxycodone she had taken shortly before the evaluation; however, the examiner

---

[2] Concerning the reduced range of light work, the medical consultant found that James should never crawl or climb ladders, ropes, or scaffolds, only occasionally climb ramps or stairs, and only occasionally reach with the left arm.  He also noted that she should avoid concentrated exposure to vibration, as well as even moderate exposure to hazards or extreme cold.

noted that James was able to physically tolerate a three-hour session during which she was alert and oriented, demonstrated normal memory, and did not appear to be easily distracted.

A few months later at the administrative hearing, James testified that she routinely took five Percocet tablets every day and due to side effects, she was unable to complete tasks and spent much of the day lying down.  She told the ALJ that between 8:00 a.m. and 5:00 p.m., she would typically spend five to six hours lying down on the couch.  On questioning by James' counsel, the vocational expert (VE) confirmed that an individual who needed to lie down for several hours during the workday could not sustain competitive work; however, when the ALJ asked about a hypothetical with the limitations he found supported by the record, the VE identified several examples of unskilled light jobs available.

## ANALYSIS

The Commissioner has a two-step process for evaluating a claimant's symptoms, that is, his or her subjective statements about his or her impairments and limitations.  *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).  At the first step, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Id*. at *3.  If so, at the second step, the ALJ "evaluate[s] the intensity and persistence of [the claimant's] symptoms . . . and determine[s] the extent to which [a claimant's] symptoms limit his or her ability to perform work-related activities."  *Id*. at * 4.  In

7

making this evaluation, the ALJ considers the medical evidence of record, along with several factors, including the claimant's activities of daily living.  *See id*. at *7.

The ALJ cited several grounds for his determination that the record did not support any work-related limitations due to medication side effects.  For example, he found that James' allegations of debilitating nausea, fatigue, and sedation were inconsistent with her description of her daily activities.  He further found that her statements were inconsistent with the medical evidence, which contained scant evidence of any side effects, let alone debilitating side effects.  To the contrary, the medical providers consistently noted that James appeared alert and oriented, with no signs of fatigue or other side effects other than occasional nausea.  This evidence is more than adequate to support the ALJ's factual finding that James did not suffer debilitating side effects from pain medications.

Faced with the lack of any record evidence to support her argument, James points to warning labels that accompany opioid medications and a physician's reference book as evidence that *she* suffered debilitating side effects.  But this "evidence" is unpersuasive because the ALJ was required to determine James' residual functional capacity based on the record—not warnings about *potential* side effects.  *See, e.g.*, *Arnold v. Saul*, 990 F.3d 1046, 1047-48 (7th Cir. 2021) ("[Claimant] relies primarily on her doctor's warning against working, driving, and operating heavy machinery while medicated.  But this warning is not evidence that [she] experienced these potential side effects.  At most, it is evidence that her medications could cause side effects—not that they did.").

8

## CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge