**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 28, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

STEVEN ALAN GUILLAR,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 20-1169
(D.C. No. 1:19-CV-00542-KLM)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **KELLY**, and **EID**, Circuit Judges.
_____

Steven Guillar appeals from an order of the district court affirming the Social

Security Commissioner's denial of his application for supplemental security income

and disability insurance benefits under the Social Security Act (the "Act").

Exercising jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm the

judgment of the district court.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

I.    BACKGROUND

Guillar has multiple sclerosis ("MS").  He worked as a self-employed sales distributor of safety equipment, but he quit working and closed his business around 2013.  Guillar filed applications for supplemental security income and disability insurance benefits.  The Commissioner denied Guillar's claim, so Guillar requested a hearing before an administrative law judge ("ALJ").  The ALJ took testimony from Guillar.  She also reviewed medical records from Dr. Stanley Ginsburg, a neurologist who examined Guillar at the request of Colorado Disability Determination Services, and from Dr. Beverley Gilder, Guillar's treating neurologist.

Dr. Ginsburg and Dr. Gilder differed in their assessments of Guillar's level of impairment.  Dr. Ginsburg opined that Guillar could continuously lift and carry up to ten pounds, frequently lift and carry eleven to twenty pounds, and occasionally lift and carry twenty-one to fifty pounds; sit for two hours, stand for one hour, and walk for one hour without interruption; frequently reach, handle, finger, feel, and push/pull; frequently use foot controls; frequently stoop, kneel, crouch, and crawl; and tolerate frequent exposure to humidity, dust, extreme cold, extreme heat, vibration; and could tolerate loud noise.  Aplt. App. Vol. 2 at 307–12.

Dr. Gilder opined that Guillar's capacity was considerably more limited.  In a September 2017 Residual Functional Capacity ("RFC") Questionnaire, she opined that Guillar's MS symptoms made him "[i]ncapable of even 'low stress' jobs."  *Id.* at 367.  She further opined that Guillar could walk less than two city blocks without needing rest; sit for no more than thirty minutes and stand for no more than ten

2

minutes at one time; rarely lift and carry less than ten pounds and never lift or carry

more than ten pounds in a competitive work situation; never twist, bend, crouch,

climb ladders, or climb stairs; and could not grasp, turn objects, or engage in fine

manipulation with his fingers or reach with his arms during an eight-hour workday.

*Id.* at 367–70. Dr. Gilder stated that Guillar was likely to be absent from work more

than four days per month due to his MS. *Id.* at 370.

In her written decision, the ALJ underwent the five-step sequential evaluation

process used by the Social Security Administration to review disability claims.[1]

Between steps three and four, the ALJ concluded Guillar maintained the RFC to

perform certain sedentary, unskilled work, subject to restrictions:

> [Guillar] is limited to being able to stand or walk for one
> hour at a time for a total of two hours out of an eight hour
> work day. [Guillar] can occasionally climb ramps or
> stairs, but never climb ladders, ropes or scaffolds. He can

---

[1] We have previously described the five-step process as follows:

> Social Security Regulations mandate that the ALJ
> who determines a claim for benefits under the Social
> Security Act follow a five-step evaluation: (1) whether the
> claimant is currently working; (2) whether the claimant has
> a severe impairment; (3) whether the claimant's
> impairment meets an impairment listed in appendix 1 of
> the relevant regulation; (4) whether the impairment
> precludes the claimant from doing his past relevant work;
> and (5) whether the impairment precludes the claimant
> from doing any work. If at any point in the process the
> Secretary finds that a person is disabled or not disabled,
> the review ends."

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citation, footnote, and
internal quotation marks omitted).

occasionally stoop, kneel, crouch, and crawl. He can
frequently reach, handle, finger, feel, push and pull, and
operate foot controls. He can occasionally operate a motor
vehicle. He can never be exposed to extreme heat or
extreme cold; cannot operate vibrating equipment; and can
never be exposed to hazards, such as unprotected heights,
heavy machinery or moving mechanical parts. [Guillar]
can carry out simple and routine tasks, make simple work-
related decisions, tolerate occasional changes in routine
work duties and tasks, and occasional interaction with the
public.

Aplt. App. Vol. 1 at 26. Because there existed jobs in significant numbers in the

national economy that Guillar could perform subject to these restrictions, the ALJ

concluded he was not disabled and therefore not entitled to benefits under the Act.[2]

After exhausting his administrative remedies, Guillar filed a civil action with

the District of Colorado, seeking review pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3). The district court affirmed the ALJ decision, and Guillar appeals.

## II.    DISCUSSION

We review the district court's decision de novo, applying the same standards

as the district court. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). We

therefore review the decision of the ALJ to determine whether substantial evidence

supports her factual findings and whether she applied the correct legal standards. *See*

*id.* "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v.*

---

[2] Under the Act, an individual shall be deemed disabled "only if his physical or
mental impairment or impairments are of such severity that he is not only unable to
do his previous work but cannot, considering his age, education, and work
experience, engage in any other kind of substantial gainful work which exists in the
national economy." 42 U.S.C. § 423(d)(2)(A); *id.* § 1382c(a)(3)(B).

4

*Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is "more than a scintilla." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "We do not reweigh the evidence or retry the case, but we meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal quotation marks omitted). "A finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (internal quotation marks omitted).

Guillar challenges the ALJ's decision in two respects. First, he asserts the ALJ erred by not providing sufficient reasons to depart from the conclusions of Dr. Gilder regarding his RFC. Second, he asserts the ALJ failed at step four to make adequate findings regarding the functional effects of his subjective symptoms such as pain. We reject each argument.

### 1. *Weight Afforded to Treating Physician*

While a treating physician's opinion "is entitled to 'controlling weight' when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in the claimant's case record[,]' [a]n ALJ may disregard a treating physician's opinion, . . . if it is not so supported." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (brackets omitted) (quoting 20 C.F.R. § 416.927(d)(2)). Here, the ALJ found the

5

RFC limitations described by Dr. Gilder were entitled to partial weight, but not full weight in light of the record as a whole:

> The undersigned gives [Dr. Gilder's] opinion partial weight in that it is partially supported by the record as a whole, which shows that [Guillar's] impairments limit him to performing less than sedentary exertional work. However, Dr. Gilder's limitations are too extreme. For example, in August of 2017, [Guillar] was found to stand and walk without hesitation. Furthermore, [Guillar's] multiple sclerosis was found to be stable in July of 2016 and January of 2017. Diagnostic testing from December of 2016 indicates no progression of the disease. Therefore, the undersigned gives this opinion partial weight.

Aplt. App. Vol. 1 at 29 (citations omitted). Guillar argues that treatment notes the ALJ cited showing his ability to stand and walk without hesitation, and the stable progression of his MS, were not inconsistent with Dr. Gilder's ultimate conclusion regarding his RFC because he has "relaxing-remitting" MS, such that sometimes his symptoms are worse than other times. But while these arguments may show that the ALJ might have justifiably reached a different conclusion than the one she did, they do not establish her findings lack substantial evidentiary support. Guillar also argues the ALJ "failed to address" the factors set forth in 20 C.F.R. § 404.1527(c) when she determined how much weight to give to Dr. Gilder's opinion, Aplt. Opening Br. at 24, but the ALJ need not explicitly discuss each of these factors for this court to meaningfully review her decision, *see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Confronted with conflicting medical opinions from Dr. Gilder and

6

Dr. Ginsburg, the ALJ adopted a middle ground that did not fully embrace either one by finding that, while Guillar was no longer capable of performing his previous work as a salesman and small business owner, he could still perform some low-skill, sedentary work. We have affirmed such an approach as consistent with the ALJ's prerogative to weigh the medical evidence before her. *See Smith v. Colvin*, 821 F.3d 1264, 1268 (10th Cir. 2016) (upholding approach of ALJ who "arrived at an assessment between the two medical opinions without fully embracing either one"); *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[W]e hold . . . if a medical opinion adverse to the claimant has properly been given substantial weight, the ALJ does not commit reversible error by electing to temper its extremes for the claimant's benefit."). Because the ALJ's decision to only partially credit the opinion of Dr. Gilder is supported by more than a scintilla of evidence, we will not disturb her findings on this basis.

      2.     *Findings as to Functional Effects of Subjective Symptoms*

Guillar argues the ALJ failed to adequately consider the disabling effects of his subjective pain, fatigue, and cognitive deficits in arriving at her RFC determination. He supports this argument by citation to the agency ruling that governs the evaluation of subjective symptoms in connection with disability claims, Social Security Ruling 16-3p, which states:

> In addition to using all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3) and 416.929(c)(3). These factors include:

7

> 1. Daily activities;
>
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.
>
> We will consider other evidence to evaluate only the factors that are relevant to assessing the intensity, persistence, and limiting effects of the individual's symptoms.

2017 WL 5180304, at *7–8 (Oct. 25, 2017).

Guillar asserts the ALJ evaluated only one of the enumerated factors (his daily activities), and that her conclusions in connection with that factor lack substantial evidentiary support. But this assertion is flawed in three respects. First, the regulations do not require the ALJ to discuss every factor listed in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); they expressly provide that she does not need to do so. *See* SSR 16-3P, 2017 WL 5180304, at *8 ("If there is no information in the evidence of record regarding one of the factors, we will not discuss that specific

8

factor in the determination or decision because it is not relevant to the case."). And we have held that an ALJ need not engage in a "formalistic factor-by-factor recitation of the evidence" when evaluating the functional effects of a claimant's subjective symptoms. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Second, the ALJ did not limit her analysis to the daily activity factor. She acknowledged Guillar's complaints that his MS was worsening, causing pain, muscle spasms, fatigue, brain fog, and concentration issues. She thus considered "[t]he location, duration, frequency, and intensity of [his] pain or other symptoms." SSR 16-3P, 2017 WL 5180304, at *7. She discussed the medical records where Guillar reported to Dr. Gilder that his energy level varied from day to day and his hearing testimony that "any type of stress shuts down his whole system, mostly his brain and he gets double and triple vision." Aplt. App. Vol. 1 at 27. She thus discussed and considered "[f]actors that precipitate and aggravate the symptoms." SSR 16-3P, 2017 WL 5180304, at *7. She also considered Guillar's medication treatment, including Rebif injections, Gabapentin, Baclofen, and Cymbalta, and discussed the effects of those medications on his symptoms. Aplt. App. at 27–28, thus considering the "type, dosage, effectiveness, and side effects of any medication [Guillar] takes or has taken to alleviate pain or other symptoms." SSR 16-3P, 2017 WL 5180304, at *8.

Third, Guillar does not identify any record evidence that the ALJ overlooked when she considered his subjective symptoms. He instead cites to his hearing testimony where he described the disabling effects of his MS and explained how stress worsened his condition, Aplt. Opening Br. at 28 (citing Aplt. App. Vol. 1 at

9

46–47), and he faults the ALJ for concluding that the objective medical evidence did not support the degree of impairment he claimed. But the ALJ discussed Guillar's testimony in her opinion, Aplt. App. Vol. 1 at 27, and she accounted for his subjective symptoms when she made an RFC determination that restricted him to unskilled, sedentary work. While the ALJ might have arrived at a different conclusion when considering the same evidence, her decision has more than a scintilla of evidentiary support and therefore withstands substantial-evidence review.

We therefore reject Guillar's argument that the ALJ did not adequately consider the disabling effects of his subjective symptoms in arriving at her disability determination.

### III.    CONCLUSION

We affirm the judgment of the district court.

Entered for the Court

Allison H. Eid
Circuit Judge

10