**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**June 5, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

B.A.Y.,

    Plaintiff - Appellant,

v.

COMMISSIONER, SSA,

    Defendant - Appellee.

No. 23-1265
(D.C. No. 1:22-CV-02376-NYW)
(D. Colo.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **MATHESON**, **BALDOCK**, and **McHUGH**, Circuit Judges.

_____

B.A.Y.[1] appeals from the district court's decision upholding the agency's

denial of his application for disability insurance benefits.  Exercising jurisdiction

under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g), we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We continue the district court's practice of using initials to refer to the plaintiff-appellant.

## BACKGROUND

Mr. Y was an infantryman in the United States Army.  On August 1, 2009, he was injured by two improvised explosive devices (IEDs) in Afghanistan, suffering a fractured skull and injuries to his shoulder and back.  The Department of Veterans Affairs (VA) assessed him with a service-connected disability rating of 100%, and he was honorably discharged from the Army in January 2012.

Mr. Y unsuccessfully applied for Social Security benefits in 2011, with an administrative law judge (ALJ) finding him not disabled in a 2013 decision.[2]  From February 2016 to February 2017, he worked as an armored car driver.  His employment there ended when he misplaced his firearm.

Mr. Y re-applied for Social Security benefits in June 2019, alleging an onset date of February 5, 2017.  After the agency denied the application initially and upon reconsideration, he had a hearing before an ALJ.  Applying the agency's five-step process for considering disability claims, *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520(a)(4), the ALJ denied benefits.  The Appeals Council granted review and remanded, directing the ALJ to adequately evaluate the opinion of consultative examiner Margaret MacDonald, MD.

---

[2] In his reply brief, Mr. Y denies that he filed for disability benefits in 2011, stating that he did not retire from the Army until January 2012.  But the record contains a 2013 ALJ decision stating that a person of Mr. Y's name, with the same social security number, filed an application for disability insurance benefits in September 2011.  *See* R. Vol. I at 187-202.  Further, his opening brief argues that the impairment findings in the 2013 decision should have been the law of the case.

On remand, the ALJ held a second hearing.  She then issued the decision underlying this appeal, again considering the application under the five-step process. At Step One, the ALJ found that Mr. Y had not engaged in substantial gainful activity from his onset date (February 5, 2017), through his date last insured (June 30, 2019). At Step Two, the ALJ found that he suffers from the severe impairments of degenerative disc disease of the cervical and lumbar spine, osteoarthritis of the right knee, and obesity.  But at Step Three, she concluded that he did not have an impairment or combination of impairments that met or medically equaled the listed impairments in the Code of Federal Regulations.  Next, the ALJ assessed Mr. Y with the residual functional capacity (RFC) to perform a range of light work with certain restrictions.  The ALJ then found at Step Four that he could not perform his past relevant work.  Finally, at Step Five, she found that there were other jobs in the national economy he could perform.  The ALJ therefore found Mr. Y not disabled.

The Appeals Council denied review, making the ALJ's decision the agency's final decision.  The district court affirmed.  Mr. Y now appeals to this court.

## DISCUSSION

### I.    Standards of Review

We review the district court's ruling de novo.  *See Wall*, 561 F.3d at 1052. "Thus, we independently determine whether the ALJ's decision is free from legal error and supported by substantial evidence." *Id.* (internal quotation marks omitted). "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our

3

judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (brackets and internal quotation marks omitted). "Substantial evidence . . . means— and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

Although Mr. Y now proceeds pro se, he was represented by counsel in the district court. We therefore liberally construe only his pro se appellate filings. *See Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994). We do not act as his advocate, and even as a pro se litigant, he must comply with the "fundamental requirements" of the court's rules. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008) (internal quotation marks omitted).

## II.    Analysis

Mr. Y's opening brief makes the same two arguments he advanced in district court.[3] After first arguing the ALJ failed to properly determine his RFC, he asserts that the deficiencies in assessing his RFC caused the ALJ to err in her Step Five analysis.

---

[3] We decline to consider additional arguments that are raised for the first time in the reply brief, including belated challenges to the onset date and the date last insured. *See Mays v. Colvin*, 739 F.3d 569, 576 n.3 (10th Cir. 2014).

### A.     Determination of RFC

The ALJ assessed Mr. Y with the RFC to perform light work, with the restrictions that he "can occasionally lift and/or carry about 20 pounds," "can frequently lift and/or carry about 10 pounds," "can stand and/or walk for about 6 hours out of an 8-hour workday," "can sit for about 6 hours out of an 8-hour workday," "can occasionally climb, stoop, kneel, crouch, and crawl," and can "occasionally balance."  R. Vol. I at 48.  Mr. Y asserts that the ALJ improperly omitted certain impairments from his RFC.  He also challenges her pain evaluation.

### 1.     Consideration of Impairments

Mr. Y asserts the ALJ improperly omitted left knee osteoarthritis, bilateral hip impairments, bilateral shoulder impairments, epicondylitis (tennis elbow), and the effects of a traumatic brain injury (TBI) from his RFC.

*Left Knee Osteoarthritis*.  Relying on limitations assessed by Dr. MacDonald and the opinion of nurse practitioner Jennifer Heery, FNP, Mr. Y alleges that his left knee osteoarthritis affected his ability to stand and walk.

The ALJ did not ignore Mr. Y's left knee.  She discussed the medical evidence, reviewing X-rays and MRIs reflecting mild changes.  She noted Mr. Y's ability, at the consultative exam, "to perform a good squat and rise without assistance," R. Vol. I at 51, and that "[t]he record does not establish significant treatment for either knee during the period at issue through the June 2019 date last insured," *id.* at 50.  She also discussed the opinion of state agency medical consultant Virginia Thommen, MD, that Mr. Y could stand and walk six of eight hours.  The

5

ALJ found Dr. Thommen's opinion to be persuasive because it was consistent with Mr. Y's medical history. This is a valid ground for evaluation. *See* 20 C.F.R. § 404.1520c(c)(2) (listing consistency as a factor in considering medical opinions). Thus, the ALJ's decision is supported by substantial evidence.

The ALJ discounted the limitations on walking assessed by Dr. MacDonald because the opinion was unsupported by the doctor's examination, was based primarily on Mr. Y's subjective complaints, and was not consistent with the other evidence of record. Similarly, she discounted the limitations assessed by Ms. Heery because they were not supported by objective evidence and were inconsistent with other evidence. These evaluations are consistent with the applicable regulation. *See id.* § 404.1520c(c)(1)-(2) (listing supportability, as well as consistency, as factors in evaluating medical opinions).

Mr. Y points out that the VA gave him a ten percent rating for left knee osteoarthritis (and he also points out VA ratings of other impairments). But as he correctly acknowledges, "[t]he agency doesn't have to heed another agency's findings." Aplt. Opening Br. at 15. *See* 20 C.F.R. § 404.1504 (stating that a decision by another governmental agency is not binding on the Social Security Administration).

*Bilateral Hip Impairments*. Mr. Y states that "[t]he same analysis applies to [his] bilateral [hip] impairments similarly unmentioned." Aplt. Opening Br. at 17. But a claimant cannot simply allege he has an impairment; he must show how the impairment results in functional limitations. *See Howard v. Barnhart*, 379 F.3d 945,

947 (10th Cir. 2004); *see also Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997) (stating, at Step Two, that a "claimant must show more than the mere presence of a condition or ailment"). Although Mr. Y points to medical evidence from before February 5, 2017, and after June 30, 2019, he does not argue how that evidence translates into functional limitations during the relevant period. If he intended to assert such impairments affected his ability to stand or walk, as discussed above, the ALJ's assessment that he could stand or walk for six hours out of an eight-hour workday was supported by substantial evidence.

*Bilateral Shoulder Impairments*. Mr. Y states that "[t]he ALJ did not address [his] shoulder impairments that he testified limited his reaching to 2-3 lbs." Aplt. Opening Br. at 17. He also relies on Dr. MacDonald's limitation to frequent reaching and Ms. Heery's limitation to occasional reaching.

The ALJ, however, did specifically note all of these points. As stated, her rejection of the opinions of Dr. MacDonald and Ms. Heery complied with the applicable standards. *See* § 404.1520c(c). Her rejection of Mr. Y's testimony on the ground that his allegations were not entirely consistent with his activities and the medical evidence also complied with applicable standards. *See* 20 C.F.R. § 404.1529(c) (listing factors relevant to considering symptoms). Particularly, the ALJ indicated that his testimony about reaching was not consistent with the consultative examination, which "did not show signs of weakness or significant loss of range of motion in his upper extremities," R. Vol. I at 52, and was not consistent with his own function report.

7

Noting that medical evidence created after the date last insured resulted in surgery for his left shoulder in May 2021, Mr. Y further asserts that "[g]iven an absence of reported shoulder trauma between July 2019 – March 2020, the ALJ should have developed the record regarding left shoulder impairment prior to the [date last insured]." Aplt. Opening Br. at 18. But here, the agency did order a consultative physical examination—the one performed by Dr. MacDonald. And the counsel who represented Mr. Y at both hearings did not request further development of the record. "[I]n a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997).

Additionally, Mr. Y states that in the 2013 decision, "the ALJ did find severe bilateral shoulder impairment and limited overhead reaching to occasional." Aplt. Opening Br. at 18 (record citation omitted). And he asks whether the 2013 findings should be "the law of the case." *Id.* at 20. As the Commissioner notes, for this argument the applicable doctrine would be res judicata rather than law of the case. *See Poppa v. Astrue*, 569 F.3d 1167, 1170 (10th Cir. 2009) (explaining that the law of the case doctrine requires an agency "on remand from a court, [to] conform its further proceedings in the case to the principles set forth in the judicial decision," while res judicata applies "when there has been a previous determination or decision" (internal quotation marks omitted)). But here the ALJ was deciding a new application, based on a later time period, so she was not bound to apply the findings from the 2013 decision. *See id.* (recognizing that "[r]es judicata applies in the social

security context when there has been a previous determination or decision . . . *on the same facts and on the same issue or issues*" (emphasis added) (internal quotation marks omitted)).

*Epicondylitis (Tennis Elbow)*.  Mr. Y cites medical evidence that he suffered epicondylitis and then cites cases regarding the sufficiency of the ALJ's review of the evidence.  We interpret this as an argument that the ALJ did not adequately consider the evidence of epicondylitis.  Again, however, it is insufficient for a claimant to show the mere existence of a condition.  Mr. Y makes no argument about functional limitations resulting from epicondylitis.  Further, as discussed with regard to shoulder impairments, the ALJ made findings about Mr. Y's ability to use his arms, and those findings are supported by substantial evidence.

*TBI Effects*.  At Step Two, the ALJ found Mr. Y's history of TBI to be a non-severe impairment because "the record does not establish residuals causing more than a minimal effect on the claimant's ability to perform basic work-related activities on an ongoing basis."  R. Vol. I at 45.  At Step Four, she declined to assess any limitations based on TBI effects.

Mr. Y posits that "[t]he ALJ's requirement of objective findings of neurological dysfunction is asking too much based on the available evidence" and her "conclusion that [t]here is no evidence in the record to corroborate residual injuries or effects from a TBI is a medical opinion beyond her expertise."  Aplt. Opening Br. at 19 (internal quotation marks omitted).  We disagree.  The ALJ's analysis goes to

supportability and consistency, which, as stated above, are permissible factors in evaluating medical opinions.  *See* § 404.1520c(c).

Mr. Y also objects that the RFC did not allow for limitations assessed by Dr. MacDonald and Valerie Besses, PsyD, who performed a consultative psychological exam.  We have already upheld the ALJ's rejection of Dr. MacDonald's opinion.  In part, Dr. Besses opined that Mr. Y "is mildly impaired in his ability [to] adapt to normal work stressors due to irritable mood and low frustration tolerance."  R. Vol. I at 931.  Mr. Y asserts that this opinion "required such mental limitations not allowed for here."  Aplt. Opening Br. at 19.  We recognize the ALJ found Dr. Besses' opinion to be persuasive, but we find no reversible error in omitting from the RFC limitations based on Dr. Besses' assessment.  The ALJ carefully considered the evidence in assessing Mr. Y's RFC.  Mr. Y asks us to substitute our judgment for that of the agency, which we do not do.  *See Vigil*, 805 F.3d at 1201; *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014).

### 2. Pain Evaluation

Mr. Y. also challenges the ALJ's pain evaluation.  The Commissioner has a two-step process for evaluating symptoms such as pain.  *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).[4]  At the first step, the ALJ determines whether "there is an

---

[4] Although "social security rulings do not carry the force and effect of law[,] [t]hey are entitled to deference . . . because they constitute Social Security Administration interpretations of its own regulations and the statute which it administers."  *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (citation and internal quotation marks omitted).

underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* at *3. If so, at the second step, the ALJ "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* In making this evaluation, the ALJ considers the medical evidence of record, along with several factors, including the claimant's activities of daily living. *See id.* at *5-8.

Mr. Y asserts that the ALJ's "analysis falls short of explaining why [his] left knee osteoarthritis, bilateral hip impairment, bilateral shoulder impairment and epicondylitis did not constitute medically determinable impairments which could reasonably pose limitations to standing and reaching due to pain." Aplt. Opening Br. at 20. But at the first step of symptom evaluation, the ALJ found that Mr. Y suffers from conditions that could reasonably be expected to cause pain with regard to standing and reaching. The ALJ did not need to discuss specific impairments to move to the next step in evaluating Mr. Y's symptoms.

Mr. Y further highlights evidence supporting limitations due to pain. To the extent his argument is based upon his own assessment of the evidence, rather than the ALJ's, it "amount[s] to an argument that this court should reweigh the evidence, which we cannot do." *Hendron*, 767 F.3d at 956; *see also Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) (because "the ALJ is entitled to resolve any conflicts in the record . . . we may not displace the agency's choice between two fairly conflicting views" (internal quotation marks omitted)).

11

Finally, Mr. Y complains that the ALJ improperly relied on evidence of his daily activities.  But daily activities are an appropriate factor for the ALJ to consider. *See* SSR 16-3p, 2017 WL 5180304 at *7.  And in addition to daily activities, the ALJ also found that the medical evidence was not entirely consistent with his allegations of pain.

* * *

For these reasons, we conclude the ALJ applied the correct legal standards and the RFC is supported by substantial evidence.

## B.    Step Five Analysis

Mr. Y contends that the ALJ's Step Five analysis was deficient because the hypothetical questions she posed to the vocational expert (VE) omitted the impairments discussed above, as well as a "[s]it/stand option, may need to lie down to rest" and "[t]he need to rest as needed."  Aplt. Opening Br. at 22.  An ALJ, however, need not question a VE about limitations she has not found to exist. *See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996); *see also Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (noting "the established rule" that hypothetical questions "must include all (and only) those impairments borne out by the evidentiary record").  Where the ALJ's hypotheticals are based on her RFC determination, and that determination is supported by substantial evidence, the hypotheticals "adequately reflected the impairments and limitations that were borne out by the evidentiary record."  *Newbold v. Colvin*, 718 F.3d 1257, 1268 (10th Cir. 2013) (brackets and internal quotation marks omitted); *see also Qualls v. Apfel*,

206 F.3d 1368, 1373 (10th Cir. 2000) (holding that hypothetical question "provided a proper basis for the ALJ's disability decision" when it "included all the limitations the ALJ ultimately included in his RFC assessment").

## CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Carolyn B. McHugh
Circuit Judge